IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JAMES BRANTLEY BRIEGEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-00291-CV-RK |
| | ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION; | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED**.

## Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d

549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ determined Plaintiff had the following severe impairments: chronic pancreatitis and diabetes mellitus. The ALJ also determined that Plaintiff has the following non-severe impairments: rib fractures, umbilical hernia, thrombocytopenia, hypertension, neuropathy, generalized anxiety disorder, affective disorder, alcohol use disorder, and unspecified neurocognitive disorder. However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing"). Additionally, the ALJ found that despite his limitations, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined by 20 CFR 404.1567(a) and 416.967(a) except he can occasionally climb ramps and stairs, balance on even surfaces, and stoop. The Plaintiff cannot kneel, crouch, and crawl. He cannot climb ladders, ropes, or scaffolds. The Plaintiff should avoid concentrated exposure to vibration, unprotected heights, and hazardous moving machinery. The ALJ determined Plaintiff is capable of performing past relevant work as a Computer Security Specialist.

On appeal Plaintiff argues the ALJ erred because (1) she failed to assess the RFC on a function-by-function assessment; (2) the RFC as to Plaintiff's physical limitations is unsupported by substantial evidence; (3) the decision as to Plaintiff's mental impairments is unsupported by substantial evidence; (4) and the ALJ's decision at step four is legally flawed. The Court will address each in turn.[1]

## I. Function-by-Function Assessment

Plaintiff first argues the ALJ erred because she failed to assess the RFC on a function-by-function basis and assessed the exertional level first. SSR 96-8P states, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" and "[o]nly after that may RFC be expressed" by exertional level of work. *See also* 20 C.F.R. § 404.1545(b) (instructing that the RFC should identify limitations on a function-by-function basis). Sitting, standing, walking, pushing, and

---

[1] The Court finds much of Defendant's brief persuasive. Portions are incorporated without further reference.

2

pulling are all listed in the regulations as physical work-related abilities. *Id.* However, the fact that the ALJ omitted a discussion of functional abilities does not mean she did not consider them. *E.g., Beagley v. Berryhill*, No. 5:17-06079-CV-RK, 2018 WL 4565461, at *3 (W.D. Mo. Sept. 24, 2018). "[A]n ALJ who specifically addresses the areas in which [s]he found a limitation and is silent as to those areas in which no limitation is found is believed to have implicitly found no limitation in the latter." *Brown v. Astrue*, No. 4:09-CV-274–DJS, 2010 WL 889835, at *25 (E.D. Mo. Mar. 8, 2010); *see Depover v. Barhnart*, 349 F.3d 563, 567-68 (8th Cir. 2003) (holding that the fact that the ALJ made explicit findings only as to functions for which he found a limit suggested he implicitly found no limits as to other functions).

Here, the ALJ limited Plaintiff to sedentary work. (Tr. 15.) The ALJ noted she was relying on the definition of "sedentary" work as contained in 20 C.F.R. § 404.1567(a), which provides as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

From this, Plaintiff argues that it is impossible to determine how the ALJ assessed his actual ability to sit, walk, stand, push and pull. The cases Plaintiff cites are distinguishable. *Hayes v. Astrue*, No. 2:11-CV-04132-NKL, 2012 WL 393406, at *5 (W.D. Mo. Feb. 6, 2012); *Schuler v. Astrue*, No. 07-3360-CV-S-JCE-SSA, 2009 WL 613556, at *5 (W.D. Mo. Mar. 9, 2009); *Brown v. Astrue*, No. 4:09CV274-DJS, 2010 WL 889835, at *25 (E.D. Mo. Mar. 8, 2010); *Proffitt v. Astrue*, No. CIV. 08-5024, 2009 WL 315690, at *3 (W.D. Ark. Feb. 6, 2009). In *Hayes*, the ALJ made no explicit findings about the claimant's functional limits. In *Schuler, Brown*, and *Profitt*, the objective medical evidence in the record revealed apparent functional limits that the ALJs did not consider. Here, the ALJ identified various functional limits specific to Plaintiff that are consistent with an ability to do "sedentary work." *Thornsberry v. Comm'r, Soc. Sec. Admin.*, No. 4:17-00531-CV-RK, 2018 WL 6716698, at *2 (W.D. Mo. Dec. 21, 2018). The ALJ specifically discusses Plaintiff's use of a cane and ability to perform daily activities, which suggests no limitations were found in Plaintiff's ability to sit, walk, stand, push, and pull. (Tr. 17.) From the ALJ's explicit findings, the Court can infer that she implicitly found no limits as to other functions. Accordingly, substantial evidence supports the RFC.

**II.     The RFC as to Plaintiff's Physical Limitations is Supported by Substantial Evidence**

Next, Plaintiff challenges the ALJ's consideration of the opinion evidence addressing his physical limitations, namely the physical RFC assessment from John Marshall Jung, M.D., a non-examining state agency medical consultant. Dr. Jung reviewed Plaintiff's records in September 2018 and opined that prior to December 2015, Plaintiff could perform a range of light work, but only occasionally balance, stoop, crawl, or climb ramps and stairs. (Tr. 18, 106-07.) He said Plaintiff could never climb ladders, ropes, or scaffolds, but could frequently kneel and crouch. (Tr. 18, 107.) Dr. Jung opined that after December 2015, Plaintiff could still perform light work, but could frequently balance, kneel, crouch, and climb ramps and stairs, and only occasionally stoop, crawl, or climb ladders, ropes, or scaffolds. (Tr. 18, 108-09.) He added that Plaintiff should avoid concentrated exposure to vibration and even moderate exposure to hazards. (Tr. 18, 109.)

Because Plaintiff applied for benefits on or after March 27, 2017, the ALJ applied the new set of regulations for evaluating Dr. Jung's opinions. The revised regulations redefine how evidence is categorized, including "medical opinion" and "prior administrative findings," and how an ALJ will consider these categories of evidence in making the RFC determination. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), and 416.920c.

Here, the ALJ considered Dr. Jung's opinion and found it to be partially persuasive insofar as it was consistent with and supported by the objective medical evidence previously discussed. (Tr. 18.) Plaintiff takes issue with the ALJ's consideration of Dr. Jung's opinion, pointing out that Dr. Jung did not examine Plaintiff, review the entire record, or specialize in chronic pancreatitis or diabetes. Yet, as the ALJ noted, Dr. Jung is a highly qualified physician and expert in the Social Security disability programs. *See* 20 C.F.R. §§ 404.1520c and 416.920c. Additionally, the ALJ stated that she already accounted for the fact that Dr. Jung did not have the benefit of examining Plaintiff or considering the additional evidence available after his opinion. (Tr. 18.) Thus, the ALJ properly relied on Dr. Jung's opinion.

Plaintiff then argues the ALJ should have developed the record further by obtaining additional opinion evidence. However, there is no requirement that an RFC finding be supported by a specific medical opinion. *Hensley v. Colvin,* 829 F.3d 926, 932 (8th Cir. 2016); *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013). As already discussed, in assessing the RFC, the ALJ properly considered Dr. Jung's opinion, along with Plaintiff's allegations and symptoms, treatment history, medications, diagnostic studies, objective examination findings, and daily

activities. (Tr. 15-20.) Additionally, the ALJ provided citations to the record in support of the RFC finding. (*Id.*) The ALJ conducted an independent review of the medical evidence, including the opinion evidence from Dr. Jung. All of the evidence together formed substantial medical evidence to support the RFC. For this reason, the ALJ was not required to obtain additional medical evidence. *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016).

**III.     The Decision as to Plaintiff's Mental Impairments is Supported by Substantial Evidence**

Plaintiff next argues the ALJ failed to include all of her mental findings in Plaintiff's RFC. Plaintiff's argument is without merit. While the ALJ found "the claimant has mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting, and maintaining pace; and mild limitation in adapting or managing oneself," the ALJ determined that all of Plaintiff's mental impairments were non-severe and caused no more than minimal limitation in the claimant's ability to perform basic mental work activities. (Tr. 13.)

Although the ALJ must consider all of Plaintiff's symptoms when making her RFC determination, the ALJ is only required to include restrictions consistent with the evidence in the record in the RFC. (Tr. 15); *see* 20 C.F.R. §§ 404.1529 and 416.929. Here, Plaintiff's clinical examinations routinely documented his full cognition, good hygiene, goal directed thought content, cooperative behavior, appropriate mood with congruent affect, normal speech, intact memory, and unimpaired attention and concentration. (Tr. 14, 930, 960, 1300, 1305, 1322, 1345, 1349, 1361, 1410, 1430, 1478-80, 1495-97, 1555, 1572, 1587, 1616, 1692, 1698-99, 1702, 1704, 1706, 1708, 1710, 1860, 1863, 1866, 2081-82.) His treatment notes also regularly stated that his alleged mental impairments were well controlled with medication. (Tr. 14, 1698, 1702, 1704, 1706, 1708, 1710.) They also showed no evidence that he required aggressive mental health treatment, hospitalization, or emergency intervention due to any psychological symptoms. (Tr. 14, 1966.) Instead, Plaintiff's treatment records revealed routine and conservative treatment, consisting of medication management. (*Id.*) Furthermore, Plaintiff's reported activities of daily living documented his ability to care for himself, perform household chores, drive, manage finances, interact with others, read, write, play computer games, put together puzzles, and shop in stores. (Tr. 13, 250-53, 262, 276, 1319, 1598, 1813.) Thus, by not including any mental restrictions in the RFC, the ALJ implicitly found that Plaintiff's non-severe mental impairments

caused no functional limitations, and this finding aligned with the evidence of record discussed above. (Tr. 15); *see Depover*, 349 F.3d at 567.

Finally, The ALJ also considered Dr. Akeson's July 2018 opinion that Plaintiff had only non-severe mental impairments with mild limitations in the four functional areas. (Tr. 19, 103-04.) The ALJ found Dr. Akeson's opinion persuasive because it was consistent with Plaintiff's benign clinical findings, fairly normal activities of daily living, and lack of need for aggressive mental health treatment. (Tr. 19.) As mentioned, Plaintiff's treatment notes showed generally normal psychological findings and symptom control with medication. Additionally, the treatment notes revealed that he was treated conservatively with only medication management. (Tr. 1966.) Because his opinion was well supported and was consistent with the evidence, the ALJ properly found it to be persuasive.[2] *See McCoy*, 2020 WL 3412234, at *5, *8.

Plaintiff's arguments as to the various medical opinions in the record are unpersuasive. Substantial evidence, including the opinions of Dr. Akeson (Tr. 19), supports the ALJ's RFC as to Plaintiff's mental impairments.

### IV. The ALJ's Decision at Step 4 was not Legally Flawed

At step four, an ALJ "has a duty to fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work." *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989). The Eighth Circuit has repeatedly stated that an ALJ "'may discharge this duty by referring to the specific job descriptions in the Dictionary of Occupational Titles [(DOT)] that are associated with the claimant's past work.'" *Young v. Astrue*, 702 F.3d 489, 491 (8th Cir. 2013) (quoting *Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir.1999)).

Plaintiff first argues the ALJ erred by failing to make explicit findings regarding the demands of Plaintiff's past relevant work before finding Plaintiff capable of performing that work. The argument is without merit. The ALJ's reference to the DOT number corresponding to Plaintiff's past work was sufficient to discharge her duty to make explicit findings regarding her past work. *See Young*, 702 F.3d at 491; *Pfitzner*, 169 F.3d at 569; *Briegel v. Berryhill*, No. 4:16-

---

[2] The Court notes Plaintiff takes issue with the ALJ's treatment of other medical opinions in the record, most notably the opinions of Dr. Larson. However, because the ALJ's opinion is otherwise supported by substantial evidence, the Court need not address these specific arguments.

CV-00917-DGK-SSA, 2017 WL 6039488, at *4 (W.D. Mo. Dec. 6, 2017) (rejecting the argument that the ALJ erred by failing to make explicit findings as to the demands of a claimant's past relevant work where the vocational expert testified about the DOT number corresponding to that work).

Plaintiff's second argument is that the ALJ erred at Step Four because the hypothetical question posed by the ALJ to the vocational expert did not capture all the consequences of Plaintiff's impairments. A hypothetical question posed to a vocational expert "must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). When a hypothetical question fails to include all of a claimant's relevant impairments, the vocational expert's answer to that question does not constitute substantial evidence. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). By contrast, "[a] vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Buckner v. Astrue*, 646 F.3d 549, 560-61 (8th Cir. 2011) (quoting *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010)). The question "'needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.'" *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). In formulating the hypothetical, "the ALJ may exclude any alleged impairments that [the ALJ] has properly rejected as untrue or unsubstantiated." *Hunt*, 250 F.3d at 625.

Here, the question posed to the vocational expert included all the limitations in the RFC. (Tr. 15, 55.) The Court has already found that the RFC was supported by substantial evidence, and Plaintiff identifies no specific limitations that should have been included in the question posed to the vocational expert. Therefore, the vocational expert's answer to that question constitutes substantial evidence. *See Buckner*, 646 F.3d at 560–61.

**Conclusion**

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court concludes that substantial evidence on the record as a whole supports the ALJ's decision for the reasons set forth above and in the Commissioner's brief.

IT IS THEREFORE ORDERED that the decision of the ALJ is **AFFIRMED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: July 8, 2021